UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SHAWN ADAMS,

        Petitioner,

v.                               CASE NO. 05-73686
                                   HONORABLE BERNARD A. FRIEDMAN
GERALD HOFBAUER,

        Respondent.
_____/

## OPINION AND ORDER DENYING HABEAS CORPUS PETITION
## AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

Petitioner Shawn Adams has filed a *pro se* application for the writ of habeas corpus under

28 U.S.C. § 2254.  The habeas petition challenges Petitioner's state court convictions for second-

degree murder and possession of a firearm during the commission of a felony (felony firearm).

Having reviewed the pleadings and state court record, the Court concludes that Petitioner is not

entitled to relief.  Accordingly, the habeas petition will be DENIED.

## I.  Background

Petitioner was charged with first-degree murder, assault with intent to commit murder,

and felony firearm.  The charges arose from a shooting near the intersection of Hasse and

Robinwood Streets in Detroit, Michigan.  As explained by the state court:

> The victim, Muhammad Adams, died of multiple gunshot wounds during
> the early morning hours on January 31, 1999.  Witnesses heard arguing shortly
> before the shooting and observed an individual standing over and shooting at
> Adams who was on the ground.  According to Kevin Dean, Adams' friend,
> defendant and Adams had a disagreement about selling drugs in a certain area,
> and the two were involved in a physical confrontation leading to Adams'
> shooting.  Dean denied seeing Adams armed with a weapon during that
> confrontation.  The defense, however, presented testimony that Adams pulled a

> gun on defendant and Jeano Adams. Defendant testified that he shot back in self-
> defense and to protect Jeano, but claimed he only intended to scare Adams.

*People v. Adams*, No. 228034 (Mich. Ct. App. Dec. 17, 2002).

The trial court dismissed the assault charge during trial, and on April 3, 2000, the jury

found Petitioner guilty of second-degree murder, Mich. Comp. Laws § 750.317, and felony

firearm, Mich. Comp. Laws § 750. 227b. The trial court sentenced Petitioner to five years in

prison for the felony firearm conviction and to a consecutive term of thirty-five years to life

imprisonment for the murder conviction.

The Michigan Court of Appeals affirmed Petitioner's convictions, but remanded the case

for re-sentencing on the murder count. *See People v. Adams*, No. 228034 (Mich. Ct. App. Dec.

17, 2002). In a motion for reconsideration, Petitioner argued that four prosecution witnesses

gave false testimony at his trial. The Michigan Court of Appeals denied reconsideration on

January 27, 2003, and the Michigan Supreme Court denied leave to appeal on July 28, 2003. *See*

*People v. Adams*, 469 Mich. 862; 666 N.W.2d 669 (2003) (table).

Meanwhile, the trial court re-sentenced Petitioner, and Petitioner appealed his new

sentence by filing a claim of right. While the appeal was pending, he filed a motion for relief

from judgment, which the trial court denied. Petitioner filed an application for leave to appeal

the trial court's decision, but the court of appeals dismissed the application because Petitioner's

appeal from the resentencing was still pending in the court of appeals. *See People v. Adams*, No.

258791 (Mich. Ct. App. Dec. 3, 2004). On February 15, 2005, the Michigan Court of Appeals

affirmed Petitioner's re-sentence. *See People v. Adams*, No. 251261 (Mich. Ct. App. Feb. 15,

2005). Petitioner did not appeal that decision, nor the decision dismissing his application for

leave to appeal the trial court's ruling on his post-conviction motion.

On September 26, 2005, Petitioner filed his habeas corpus petition.  His claims are:

I.      The prosecutor's pervasive misconduct throughout Petitioner's
        trial violated Petitioner's right to due process of law and a fair trial
        as guaranteed by the Federal Constitution.

        A.      The prosecutor's comments during voir dire tainted
                the jury selection process.

        B.      The prosecutor deliberately interjected inadmissible
                and prejudicial bad acts evidence into the trial.

        C.      The prosecutor forced Petitioner to comment on the
                credibility of other witnesses.

        D.      The prosecutor's improper argument denied
                Petitioner of a fair trial.

        E.      The prosecutor engaged in improper examination of
                the witnesses.

        F.      The cumulative effect of the prosecutor's
                misconduct deprived Petitioner of a fair trial.

II.     Petitioner was denied his right to due process of law and a fair trial
        as guaranteed by the Federal Constitution where the trial court
        failed to conduct a fair and impartial trial.

        A.      The court improperly excluded defense witnesses
                and violated Petitioner's constitutional right to
                present his defense.

        B.      The court did not control the scope of the voir dire
                and allowed the prosecutor to deprive the petitioner
                of a fair and impartial jury.

        C.      The trial court abused its discretion by denying
                defense counsel's motion for a mistrial based upon
                the prosecutor's attempt to infect the proceedings
                with prejudicial evidence.

        D.      The court refused to instruct on impeachment with
                prior inconsistent statement and misled the jury
                with an erroneous cautionary instruction on other

bad acts evidence that undermined Petitioner's
defense of self-defense.

     (i)      Impeach with prior inconsistent
              statement.

     (ii)     Evidence of an uncharged offense
              introduced during rebuttal.

   E.     Petitioner was denied his right to a fair trial by the
cumulative errors made during his trial in violation
of his right to due process of law.

III.    Petitioner is entitled to relief from judgment where his conviction
was obtained in violation of his right to a fair trial and where he
can show cause and actual prejudice for not having raised the
issues in a prior appeal.

IV.    Petitioner was denied his right to a fair trial as guaranteed by the
Federal Constitutional where the prosecutor's principal witness
perjured himself on a material matter and his perjurious testimony
was attested to in part by other prosecution witnesses and used to
discredit Petitioner's defense of self-defense and defense of others.

V.    Petitioner was denied his right to a fair trial as guaranteed by the
Federal Constitution where the prosecutor failed to disclose
material evidence favorable to Petitioner and willfully ignored the
perjurious testimony of key prosecution witnesses.

Respondent argues in an answer to the habeas petition that the Court should deny the habeas

petition because Petitioner's claims are procedurally defaulted or meritless.

## II.  Standard of Review

A habeas petitioner is entitled to the writ of habeas corpus if he or she can show that the

state court's adjudication of the claims on the merits–

(1) resulted in a decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by the Supreme
Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (Justice O'Connor's majority opinion on Part II). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id*. at 410 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409. Section "2254(d) dictates a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (quotation marks and citations omitted). "Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1)." *Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004), *cert. denied*, 544 U.S. 931 (2005).

## III. Discussion

### A. The Prosecutor's Conduct

Petitioner alleges that the prosecutor's pervasive misconduct during trial violated his right to due process of law and a fair trial as guaranteed by the Federal Constitution.

## 1. The Procedurally Defaulted Claims

Petitioner asserts that the prosecutor made improper comments during *voir dire.*  In a related claim, Petitioner alleges that the trial court failed to control the scope of the *voir dire* and allowed the prosecutor to deprive him of a fair and impartial jury.  Petitioner also alleges that the prosecutor conducted an improper examination of witnesses and attempted to make him comment on the credibility of other witnesses.

Respondent argues that these claims are procedurally defaulted.  A procedural default is "a critical failure to comply with state procedural law. . . ." *Trest v. Cain*, 522 U.S. 87, 89 (1997).  Federal habeas courts may not consider a state prisoner's procedurally defaulted claims "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

The state procedural rule in question here is Michigan's contemporaneous-objection rule, which requires defendants to make timely and specific objections at trial in order to preserve their claims for appellate review.  *See People v. Carines*, 460 Mich. 750, 761-65; 597 N.W.2d 130, 137-39 (1999); *People v. Grant*, 445 Mich. 535, 546; 520 N.W.2d 123, 128 (1994).   With a few minor exceptions, Petitioner did not object to the prosecutor's remarks during *voir dire,* during the prosecution's direct examination of witnesses, or during the cross-examination of Petitioner.  The Michigan Court of Appeals concluded from Petitioner's failure to object to the prosecutor's conduct during trial that the issues were unpreserved for appellate review and that

the alleged errors did not result in plain error affecting Petitioner's substantial rights.

A state appellate court's review for plain error constitutes enforcement of a state procedural rule, *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001), and the contemporaneous-objection rule was an adequate and independent state ground for denying relief because the rule was in effect before Petitioner's trial. Therefore, in order for this court to consider the substantive merits of Petitioner's procedurally defaulted claims, he must establish "cause and prejudice" or a "miscarriage of justice."

Petitioner has not offered any argument in support of a finding of "cause" for the failure to object at trial or prejudice from the claimed errors. The Court therefore deems the "cause and prejudice" argument abandoned. *Roberts v. Carter*, 337 F.3d 609, 613 (6th Cir. 2003).

The narrow exception for fundamental miscarriages of justice requires a habeas petitioner to demonstrate that the alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Murray v Carrier*, 477 U.S. 488, 496 (1986). "To be credible, such a claim requires [the] petitioner to support his allegations of constitutional error with new reliable evidence . . . that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 327.

Petitioner admitted throughout the state court proceedings that he shot Muhammad Adams. His justification for the shooting was based in part on his allegation that Muhammad Adams, Mario Adams, and Kevin Dean assaulted him on Omira Street about three and a half hours earlier. Petitioner claims to have new evidence that witnesses perjured themselves when

they testified that Mario Adams was not present on Omira Street three and a half hours before the shooting.

Even if the Court were to assume that prosecution witnesses lied about Mario Adams' whereabouts at 10:00 p.m. on January 30, 1999, Mario's alleged assault on Petitioner did not justify the shooting of Muhammad Adams three and a half hours later. Mario was not even present at the intersection of Hasse and Robinwood Streets when Petitioner shot Muhammad. Therefore, new evidence of alleged perjury by prosecution witnesses is not credible evidence from which a reasonable juror could have concluded that Petitioner was not guilty of second-degree murder and felony firearm. A miscarriage of justice will not occur as a result of the Court's failure to adjudicate the merits of Petitioner's procedurally defaulted claims.

### 2. Prosecutorial-Misconduct Claims that are not Procedurally Defaulted

Petitioner's other claims about the prosecutor must be "reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004), *cert.* denied, 544 U.S. 921 (2005). To prevail on his claims, Petitioner must demonstrate that the prosecutor's conduct violated a specific constitutional right or infected the trial with such unfairness as to make the resulting conviction a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). It is not enough to show that the prosecutor's conduct or remarks were undesirable or even universally condemned. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). On habeas review, the complained-of conduct must be both improper and flagrant, *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006), *cert. denied*, __ U.S. __, 127 S. Ct. 1376 (2007), and "'so egregious as to render the entire trial fundamentally unfair.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir. 1979)). The

Court must consider the following factors to determine whether a prosecutor's improper acts were so flagrant as to warrant reversal of the petitioner's conviction:

> (1) whether the evidence against the defendant was strong, (2) whether the conduct of the prosecution tended to mislead the jury or prejudice the defendant; (3) whether the conduct or remarks were isolated or extensive; and (4) whether the remarks were made deliberately or accidentally.

*Slagle v. Bagley,* 457 F.3d 501, 516 (6th Cir. 2006), *cert. denied,* __ U.S. __, 127 S. Ct. 2977 (2007).

### a. Other Acts Evidence

Petitioner alleges that the prosecutor deliberately interjected inadmissible and prejudicial "bad acts" evidence into the trial. The disputed evidence consisted of testimony regarding (1) Petitioner's prior conviction for a drug offense, (2) his possession of a gun about two and a half weeks before the charged incident, and (3) an assault and robbery he allegedly committed on the same night as the shooting of Muhammad Adams.

The Michigan Court of Appeals concluded on review of Petitioner's claim that the prosecutor's conduct was not improper and did not prejudice Petitioner. The court stated:

> [T]he prosecutor was attempting to link defendant to the weapon involved in the shooting. The record does not demonstrate bad faith by the prosecutor and defendant was not prejudiced by the questioning. The witness testified that the gun she saw did not resemble the weapon allegedly involved in this case. In addition, the court instructed the jury to disregard the witness' response.
>
> Similarly, the record does not demonstrate bad faith by the prosecutor in asking defendant about a prior conviction for selling drugs. Moreover, defendant was not prejudiced by the question considering that other evidence had already been received showing defendant's involvement in selling drugs.
>
> Nor did the prosecutor commit misconduct in presenting the rebuttal testimony of Harold Calhoun. The testimony was properly offered to rebut defendant's testimony about the circumstances of this shooting, notwithstanding

that it involved other criminal acts committed by defendant. *People v. Holland,*
179 Mich. App. 184, 193-194; 445 N.W.2d 206 (1989).

*Adams*, Mich. Ct. App. No. 228034, at 2 (internal citation omitted).

The United States Court of Appeals for the Sixth Circuit has explained that

[t]here is no clearly established Supreme Court precedent which holds that a state
violates due process by permitting propensity evidence in the form of other bad
acts evidence. . . . While the Supreme Court has addressed whether prior acts
testimony is permissible under the Federal Rules of Evidence, *see Old Chief v.
United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681
(1988), it has not explicitly addressed the issue in constitutional terms.

*Bugh v. Mitchell*, 329 F.3d 496, 512-13 (6th Cir. 2003). Because there is no Supreme Court

decision holding that the admission of "other acts" evidence violates the Constitution, the state

court's conclusion that the evidence was admissible and not prejudicial cannot be deemed

"contrary to" Supreme Court precedent under 28 U.S.C. § 2254(d). *Id*. at 513.

### b. The Prosecutor's Arguments

Petitioner contends that the prosecutor made numerous prejudicial remarks during his

opening and closing arguments. More specifically, Petitioner alleges that the prosecutor:

demeaned his defense by describing the defense theory as ludicrous and a last ditch effort;

attempted to invoke sympathy for the victim's family and suggested revenge for the victim's

death; diminished or shifted the burden of proof on the murder charge by stating that Petitioner

caused the death and intended to kill Muhammad and that the only issue was whether

Petitioner's intent was premeditated, deliberate, justified, or excused; expressed a personal

opinion about Petitioner's guilt, opined that Petitioner was a liar, and stated that he knew

Petitioner and the defense witnesses could not deceive the jurors; vouched for Kevin Dean and

other prosecution witnesses; and mischaracterized the coroner's testimony about the distance

from which Muhammad Adam was shot.

Prosecutors may not suggest that the defendant has an obligation to produce evidence. *United States v. Clark*, 982 F.2d 965, 968-69 (6th Cir. 1993). Nor may they misrepresent evidence, *Hodge v. Hurley*, 426 F.3d 368, 380 (6th Cir. 2005), vouch for witnesses, *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999), or "express a personal opinion or belief regarding the truth or falsity of any testimony or evidence." *United States v. Hurst*, 951 F.2d 1490, 1502 (6th Cir. 1991) (citing *United States v. Young*, 470 U.S. 1, 8 (1985)).

While the prosecutor's conduct was deliberate and far from exemplary, the evidence against Petitioner was strong. He admitted shooting Muhammad Adams, and although he claimed that the shooting was done in defense of himself and his cousin Jeano Adams, there was evidence that he fired twelve times at Muhammad and that Muhammad was struck seven times. One eyewitness testified that the shooter fired at the victim while the victim was lying on the ground. There was additional evidence that Petitioner left the crime scene, did not report the incident to the authorities, and evaded the police for several months.

The prosecutor was entitled to argue that Petitioner was lying, because Petitioner's testimony contradicted the testimony of other witnesses. *United States v. Collins,* 78 F.3d 1021, 1040 (6th Cir. 1996); *accord Francis*, 170 F.3d at 551 (noting that a prosecutor may assert that a defendant is lying by emphasizing discrepancies between the evidence and the defendant's testimony); *United States v. Veal*, 23 F.3d 985, 989 (6th Cir. 1994) (stating that, where the defendant put his veracity at issue by taking the stand, it was not improper for the prosecutor to argue that the defendant should not be believed because he had a motive to lie). The prosecutor also was entitled to highlight inadequacies in the defense and to "forcefully assert reasonable

inferences from the evidence." *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir.), *cert. denied*, 546 U.S. 865 (2005). It was even permissible to demonstrate the lack of evidence supporting the defense theory, *United States v. Forrest*, 402 F.3d 678, 686 (6th Cir. 2005), and to "argue that the jury should arrive at a particular conclusion based on the record evidence, including the conclusion that the evidence prove[d] the defendant's guilt." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999), *abrogated on other grounds as explained in Mackey v. Dutton*, 217 F.3d 399, 405-06 (6th Cir. 2000)).

Furthermore, the trial court explained to the jury that the attorneys' questions and arguments were not evidence. The trial court stated that the jurors should accept what the attorneys said only if the attorneys' arguments were supported by the evidence or the jurors' own common sense and general knowledge. (Tr. Mar. 30, 2000, at 45.) The Court concludes that the prosecutors' remarks were not flagrant or so egregious as to deprive Petitioner of a fair trial and require reversal of his conviction.

### c. Cumulative Effect

Petitioner asserts that the cumulative effect of the prosecutor's alleged misconduct deprived him of a fair trial. This argument lacks merit, because constitutional errors that would not individually support habeas relief cannot be cumulated to support habeas relief. *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005), *cert. denied*, __ U.S. __, 127 S. Ct. 557 (2006).

### B. The Trial Court

Petitioner alleges next that the trial court failed to conduct a fair and impartial trial.

### 1. Excluded Defense Witnesses

Petitioner's first allegation about the trial court is that the court improperly excluded two defense witnesses and violated Petitioner's constitutional right to present a defense. The excluded witnesses were Dalma Gregory, Quaine Gregory, and Tamika Childress.

The Michigan Court of Appeals adjudicated Petitioner's claim on the merits and concluded that the trial court did not abuse its discretion in excluding the witnesses, nor deprive Petitioner of his right to present a defense. In reaching this conclusion, the court of appeals noted that the witnesses were not able to offer any relevant testimony in support of Petitioner's self-defense theory.

The right to due process in a criminal trial is, in essence, the right to defend against the State's charges. *Chambers v. Mississippi,* 410 U.S. 284, 294 (1973). "While the Constitution prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006). Even when a court erroneously excludes defense evidence, "'[w]hether the exclusion of [witnesses'] testimony violated [defendant's] right to present a defense depends upon whether the omitted evidence [evaluated in the context of the entire record] creates a reasonable doubt that did not otherwise exist.'" *United States v. Blackwell*, 459 F.3d 739, 753 (6th Cir. 2006) (alterations in original) (quoting *Washington v. Schriver,* 255 F.3d 45, 57 (2d Cir. 2001)), *cert. denied*, __ U.S. __, 127 S. Ct. 1336 (2007).

Petitioner contends that the excluded witnesses would have testified that Mario Adams and Muhammad Adams were present on Omira Street about 10:00 p.m. on January 30, 1999.

According to Petitioner, this evidence would have supported his self-defense theory that Mario and Muhammad assaulted him on Omira Street prior to the shooting of Muhammad at the intersection of Hasse and Robinwood.

During an offer of proof outside the jury's presence, Delma Gregory testified that, about 10:00 p.m. on January 30, she saw Mario Adams and Muhammad Adams near her home on Omira Street. She claimed, however, that the two men were just talking together as she rode by them. Defense counsel claimed that this testimony was relevant to an assault on Petitioner two houses away from Ms. Gregory's home, but Ms. Gregory offered no testimony about the assault. (Tr. Mar. 29, 2000, at 7-12.)

Quaine Gregory testified that Mario Adams had been looking for her about 4:00 a.m. on January 31, 1999. Defense counsel did not even bother to argue in favor of producing Quaine Gregory, because she had no relevant evidence to offer. (*Id*. at 13-16.)

Tamika Childress testified that, at 10:00 p.m. on January 30, 1999, she saw Muhammad Adams, Mario Adams, and a third man, whom she did not know, get out of a car and walk up to the porch of the house next door. That was the last time she saw the three men. (*Id*. at 107-12.)

Tamika, like Delma and Quaine Gregory, knew nothing about the alleged assault on Petitioner on Omira Street. Thus, testimony from the stricken witnesses would not have created a reasonable doubt in the jurors' minds. The state court's decision that Petitioner was not deprived of his right to present a defense was objectively reasonable.

### 2.  Denial of Motions for Mistrial

Petitioner contends that the trial court abused its discretion by denying his motions for a mistrial, which were based on the prosecutor's questions about criminal conduct for which

14

Petitioner was not on trial. The Michigan Court of Appeals concluded on review of this issue that the trial court did not abuse its discretion in denying Petitioner's motions.

A trial judge must exercise "sound discretion" when deciding whether to declare a mistrial. *Arizona v. Washington*, 434 U.S. 497, 514 (1978). "Thus, if a trial judge acts irrationally or irresponsibly, his [or her] action cannot be condoned." *Id.* (internal citation omitted). Reviewing courts, however, must accord "great deference" to the trial judge's decision. *Id.*

The trial court sustained defense counsel's objections to "other acts" evidence and instructed the jurors to stay focused on the real issue of whether Petitioner murdered Muhammad Adams. (Tr. Mar. 28, 2000, at 116-20; Tr. Mar. 29, 2000, at 171-80; Tr. Mar. 30, 2000, at 69-70.) In light of the trial court's cautionary instructions and the fact that the disputed evidence was not so prejudicial as to deprive Petitioner of a fair trial, the trial court acted responsibly in denying Petitioner's motions for a mistrial. Thus, the decision of the Michigan Court of Appeals was objectively reasonable and neither contrary to, or an unreasonable application of, *Arizona v. Washington.*

### 3. The Jury Instructions

Petitioner states that the trial court erred when it (1) refused to instruct the jurors on impeachment with a prior inconsistent statement and (2) gave an erroneous cautionary instruction on other "bad acts" evidence. The question on habeas review of a jury instruction is not whether the instruction was "undesirable, erroneous, or even 'universally condemned.'" *Cupp v. Naughten*, 414 U.S. 141, 146 (1973). Instead, before a federal court may overturn a state conviction, the instruction must have violated "some right which was guaranteed to the

defendant by the Fourteenth Amendment" or the ailing instruction by itself must have "so infected the entire trial that the resulting conviction violates due process." *Id.* at 146-47. The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." *Dowling v. United States*, 493 U.S. 342, 352 (1990).

### a. Impeachment with a Prior Inconsistent Statement

Petitioner was charged with assaulting Kevin Dean with intent to commit murder. Dean was the State's principal witness against Petitioner. He began his testimony by informing the trial court that he wanted to "throw out" whatever his statement was and "talk freely." (Tr. Mar. 27, 2000, at 185.) He later recanted portions of his statement to the police and testimony at the preliminary examination where he stated that Petitioner pointed a gun at him and pulled the trigger. The gun apparently jammed, and Dean claimed at trial that he did not feel threatened by what Petitioner had done. He refuted his prior statement and testimony about that aspect of the incident, claiming that it never happened. (*Id.* at 249-56.) Petitioner alleges that the trial court erred when it refused to instruct the jury on Dean's prior inconsistent statement and testimony.

The standard jury instruction on inconsistent statements authorizes jurors to use prior inconsistent statements to determine whether a witness's trial testimony is truthful. *See* CJI 2d 4.5. The trial court refused to give the requested instruction on prior inconsistent statements because it viewed Dean's testimony as a recantation, as opposed to, a prior inconsistent statement. The Michigan Court of Appeals agreed with the trial court that the standard jury instruction on prior inconsistent statements was not applicable where the witness recanted part of his prior testimony.

Even assuming that the trial court's ruling was incorrect, the alleged error of state law is

not a basis for habeas corpus relief. *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). The claimed error did not violate Petitioner's constitutional right to due process, because the trial court dismissed the assault-with-intent-to-murder charge after Mr. Dean denied being assaulted by Petitioner. Although Dean went on to testify about Petitioner shooting Muhammad Adams, the jurors heard Dean's recantation and were free to conclude that Dean either lied previously or was lying at trial and was not a credible witness.

### b. The Instruction on Other Acts Evidence

Petitioner challenges the trial court's failure to give the standard instruction on "other acts" evidence. The standard instruction on uncharged crimes cautions jurors not to conclude from uncharged crimes that the defendant is a bad person or likely to commit crimes. The instruction also states that, to find the defendant guilty, all the evidence must convince the jurors beyond a reasonable doubt that the defendant committed the alleged crime. *See* CJI2d 4.11.

Instead of giving the standard instruction, the trial court gave its own instruction on "other acts" evidence. The Michigan Court of Appeals disapproved of the trial court's instruction, but determined that the instruction was sufficient to protect Petitioner's rights.

This Court agrees that the trial court's jury instruction on "other acts" evidence was sufficient. The trial court charged the jurors not to judge Petitioner on the basis of the kind of person he was or on the basis of evidence of other crimes. The court explained that the jurors' duty was to consider whether Petitioner murdered Muhammad Adams and, if so, whether he premeditated and deliberated the murder. (Tr. Mar. 30, 2000, at 69-70.) The instruction conveyed the principle that the jurors were not to be concerned with irrelevant conduct, which had no bearing on the charged crime. The instruction did not violate Petitioner's rights to due

17

process of law and a fair trial.

### 4. Conclusion

For all the reasons given above, the Court concludes that the trial court did not deprive Petitioner of a fair trial. Therefore, the state appellate court's decision affirming Petitioner's convictions was objectively reasonable.

### C. Perjury and the Prosecutor's Alleged Failure to Disclose Evidence

Petitioner's fourth and fifth claims allege that Kevin Dean, the prosecutor's principal witness, and other prosecution witnesses committed perjury at Petitioner's trial. Petitioner asserts that the prosecutor ignored the perjury and failed to disclose evidence favorable to the defense theory.

### 1. Procedural Default

Respondent argues that these claims are procedurally defaulted because Petitioner raised them for the first time in his motion for relief from judgment and failed to present the claims in the Michigan Supreme Court when he had an opportunity to do so. Procedural default is not a bar to substantive review of a meritless claim, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), *cert. denied*, 546 U.S. 1100 (2006), and the Court has found no merit in Petitioner's claims. Accordingly, the Court will proceed to analyze Petitioner's claims rather than consider whether they are procedurally defaulted.[1]

### 2. On the Merits

---

[1] As a result of the Court's decision to excuse the alleged procedural default, the Court need not consider Petitioner's third claim, which purports to show "cause and prejudice" for his procedural default of not raising his fourth and fifth claims in the appeal or right.

Petitioner alleges that Kevin Dean and other prosecution witnesses committed perjury and that the prosecutor ignored the perjury. The alleged perjury was testimony that Mario Adams was present at his mother's home about 10:00 p.m. on January 30, 1999. Petitioner testified in contradictory fashion that Mario, Muhammad Adams, and Kevin Dean assaulted him and Jack Everett on Omira Street about 10:00 p.m. on January 30, 1999.

Jack Everett died from injuries sustained in the assault, and Mario Adams pleaded no contest to manslaughter in connection with Everett's death. His no-contest plea occurred over two years after Petitioner's trial. Petitioner claims that the prosecutor knew or should have known that Mario Adams and Kevin Dean were under investigation for the death of Jack Everett. Petitioner concludes that the prosecutor suborned perjury when he allowed witnesses to testify that Mario Adams was home at 10:00 p.m. on January 30, 1999. Petitioner further alleges that the prosecutor withheld favorable evidence about the incident on Omira Street and that the omitted evidence supported Petitioner's theory of self defense and defense of others.

The only state court to address the merits of Petitioner's fourth and fifth claims was the trial court. It construed Petitioner's claim to allege that he should have been convicted of voluntary manslaughter, which requires showing that the defendant killed someone under the influence of passion or hot blood as a result of adequate or reasonable provocation. *People v. Pouncey*, 437 Mich. 382, 388; 471 N.W.2d 346, 349-50 (1991).

The trial court determined that the interval between the incident on Omira Street and the shooting on Hasse and Robinwood Streets was sufficient to constitute a "cooling off" period and, therefore, Petitioner's argument that his state of mind was influenced by the earlier altercation lacked merit. The trial court also stated that Petitioner was assuming the prosecutor had specific

19

knowledge of the Jack Everett case and had read all the witnesses' statements in that case. The court concluded its analysis by stating that Petitioner was merely speculating and had offered no proof to support his allegation that the prosecutor knowingly presented false testimony.

### a. Relevant Supreme Court Decisions

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). There are three components to a *Brady* claim: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). "Evidence is material 'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *United States v. Phillip*, 948 F.2d 241, 249 (6th Cir. 1991) (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987)). "To prevail on a claim that the government presented perjured testimony, [a defendant] must show '(1) that the statements were actually false; (2) the statements made were material; and (3) [the] prosecution knew they were false.'" *United States v. Pierce*, 62 F.3d 818, 834 (6th Cir. 1995) (quoting *United States v. Farley*, 2 F.3d 645, 655 (6th Cir. 1993)).

### b. Analysis

Although Mario Adams apparently was prosecuted for the death of Jack Everett on Omira Street on January 30, 1999, Petitioner has provided no evidence establishing that Mario committed the crime at 10:00 p.m. that night. Thus, Petitioner has failed to show that

prosecution witnesses lied under oath when they claimed that Mario Adams was at home about 9:30 or 10:00 p.m. on January 30, 1999.

Petitioner also has not shown that the prosecutor withheld material evidence favorable to the defense. Petitioner claims that, if the jury had known Mario Adams was not home at the time of the Omira Street incident, as prosecution witnesses claimed, the jury would have questioned the credibility of prosecution witnesses and found Petitioner's defense to be truthful.

Even if the prosecutor had conceded that Mario Adams assaulted Petitioner and Jack Everett on Omira Street, the record indicates that Petitioner's subsequent conduct was not justified by Mario's assault. The shooting of Muhammad Adams occurred over three hours after the incident on Omira Street and a few miles away from that address. By all accounts, Mario Adams was not even present at the shooting on Hasse and Robinwood Streets, and Petitioner concedes that Mario's whereabouts did not directly concern an essential element of the crime. *See* Mem. of Law in Support of Habeas Pet. at 49. He also concedes that it cannot be concluded at this time that the prosecutor knowingly suborned perjury. *Id*. at 66.

The testimony established that Petitioner and Jeano Adams pursued Kevin Dean and Muhammad Adams, who were riding in another car. Jeano flashed his car lights at Kevin and Muhammad, who stopped when they saw the flashing lights. An argument ensued between Muhammad and Jeano. Petitioner scuffled with Muhammad and retreated to his car after Muhammad hit him in the eye. Petitioner subsequently exited the car, approached Muhammad, and fired twelve shots at him; seven of the gunshots hit Muhammad. One witness heard two sets of shots and saw the shooter firing down at the victim while the victim was lying on the ground. Although Petitioner and Jeano Adams testified that Muhammad had a gun, Kevin Dean did not

21

think that Muhammad was armed, and emergency response personnel testified that they found no weapon on or near Muhammad's body.

The evidence, as summarized in the preceding paragraphs, demonstrates that Petitioner was not justified in shooting Muhammad Adams. Therefore, even if Petitioner could have shown that Mario Adams assaulted Petitioner and Jack Everett on Omira Street at 10:00 p.m. on January 30, 1999, the evidence would not have made a difference in the jury's verdict. Petitioner has failed to establish that the prosecutor withheld material evidence and suborned perjury.

## IV. Conclusion

The state courts' factual findings were reasonable and their conclusions did not result in decisions that were contrary to, or an unreasonable application of, Supreme Court precedent. Accordingly, the application for a writ of habeas corpus is DENIED.

The Court DECLINES to issue a certificate of appealability because reasonable jurists would not find the Court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Nor would reasonable jurists debate whether the petition states a valid claim of the denial of a constitutional right and whether the Court's procedural ruling on Petitioner's procedurally defaulted claims was correct. *Id.*


_____s/Bernard A. Friedman_____
BERNARD A. FRIEDMAN
CHIEF UNITED STATES DISTRICT JUDGE

Dated: November 27, 2007



Dated:



I hereby certify that a copy of the foregoing document
was served upon counsel of record by electronic and/or first-class mail.

s/Carol Mullins
Case Manager to Chief Judge Friedman